Dawn Newton, Cal. State Bar. No. 209002
dnewton@donahue.com
Eric A. Handler, Cal. State Bar No. 224637
ehandler@donahue.com
Padmini Cheruvu, Cal. State Bar No. 301292
pcheruvu@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 25th Floor
Oakland, California 94612-3520
Telephone:   (510) 451-3300
Facsimile:    (510) 451-1527

Attorneys for Plaintiffs
SAFARI KID INC. and SAFARI KID FRANCHISING LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFARI KID INC., a California corporation; and SAFARI KID FRANCHISING LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MAHZAD IRANI, an individual; FERADOON IRANI, an individual; NESS ENTERPRISE, LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTION**<br><br>1. Trademark Infringement<br>2. False Designation of Origin<br>3. Cyberpiracy<br>4. Unfair Competition<br>5. Misappropriation of Trade Secrets<br>6. Breach of Oral Contract<br>7. Fraud<br><br>DEMAND FOR A JURY TRIAL |

Plaintiffs Safari Kid, Inc. ("**SKI**") and Safari Kid Franchising, LLC ("**SKF**," and together with SKI, "**Plaintiffs**") state and allege for their complaint against defendants Mahzad Irani ("**Ms. Irani**"), Feradoon Irani ("**Mr. Irani**," and together with Ms. Irani, the "**Iranis**"), Ness Enterprise, LLC ("**Ness**"), and Does 1 through 10, inclusive, (together, the "**Does**", and together with the Iranis and Ness, "**Defendants**") as follows.

## PARTIES, JURISDICTION, AND VENUE

### Parties

1. SKI is a California corporation with its principal place of business in Newark, California.

2. SKF is a California limited liability company with its principal place of business in Newark California.

3. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant hereto the Iranis have been and are individuals residing in California and doing business throughout California, including in the Northern District of California.

4. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant hereto Ness has been and is a California limited liability company conducting business throughout California, including in the Northern District of California.

5. Plaintiffs are informed and believe, and based thereon allege, that the Does are entities or individuals subject to the Court's jurisdiction. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Does are unknown to Plaintiffs, who therefore sue the Does, and each of them, by such fictitious names, and Plaintiffs will seek leave of the Court to amend this Complaint to allege such true names and capacities when the same are ascertained.

6. Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants was the agent, employee, and/or alter-ego of each of the other remaining Defendants and, at all times relevant hereto, acted within the course and scope of such agency and/or employment.

///

## Jurisdiction

7. The Court has subject matter jurisdiction over this action under 15 U.S.C. §§ 1121 and 1125(d) (trademark claims), 28 U.S.C. § 1331 (federal subject matter jurisdiction), 28 U.S.C. §§ 1338(a) (trademark actions) and (b) (unfair competition claim joined with a substantial and related trademark claim), and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims for misappropriation of trade secrets, breach of oral contract, and fraud). This civil action includes counts for infringement of a trademark under section 43(a) of the Lanham Act, false designation of origin under section 43(a) of the Lanham Act, violation of the Anti-Cybersquatting Consumer Protection Act, unfair competition as joined with a substantial and related trademark claim, and claims under California state law for misappropriation of trade secrets, breach of an oral contract, and fraud.

8. Plaintiffs are informed and believe, and based thereon allege, that the Court has personal jurisdiction over: (a) the Iranis because they each reside in California and have done substantial business in the Northern District of California; and (b) Ness because it is organized under California law and has engaged in sales of goods and services throughout California, including without limitation in the Northern District of California.

9. Plaintiffs are informed and believe, and based thereon allege, that the Court has personal jurisdiction over Defendants because at all times relevant hereto Defendants knew, or reasonably should have known, that: (a) Plaintiffs are located in California and, specifically, have their principal place of business in the Northern District of California; (b) Defendants directed and aimed their alleged unauthorized activities at Plaintiffs, which are each located in the Northern District of California; and (c) Plaintiffs would likely suffer the brunt of the harm caused by Defendants in California at Plaintiffs' principal places of business. The acts and omissions of Defendants alleged herein caused Plaintiffs to bear the brunt of the harm in California at their principal place of business in Newark, California within this District.

## Venue

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

///

**Intradistrict Assignment**

11. Because this matter is an Intellectual Property Action, there is no basis for assignment to a particular location or division of the Court pursuant to Civil L.R. 3-2(c).

**GENERAL ALLEGATIONS**

12. Since 2005, and in connection with its substantial commercial use of the SAFARI KID mark, SKI has owned and operated learning centers for young children offering preschool and after school programs for children as young as twenty-four months old and as old as elementary school age.

13. By 2010, SKI had three locations and its owners and founders, Deepak and Shahdokth Mudakavi (together, the "**Mudakavis**"), had formed SFK for the purpose of franchising the SAFARI KID brand. In 2011, the first four franchise locations opened and by December 31, 2014, the SAFARI KID system had eighteen operating units in California.

14. The SAFARI KID mark is inherently distinctive, or has developed secondary meaning, such that its primary significance is that it has become known by the consuming public as a source indicator for Plaintiffs' products and services.

15. In early 2013, the Iranis contacted the Mudakavis and asked if the Iranis could open a SAFARI KID franchise. At the time the Iranis resided in Canada, and they represented to the Mudakavis that they were hoping to move to the United States and wanted to open a SAFARI KID learning center in San Diego, California.

16. In response to the Iranis' inquiry, SKF provided the Iranis with its Franchise Disclosure Document. The Iranis then wrote to SKF and therein represented that they had reviewed the Franchise Disclosure Document and were ready to move to California and start a SAFARI KID learning center once they got their finances in order. Based on those representations, SKF agreed to sell a SAFARI KID franchise to the Iranis to be operated in San Diego, California.

17. The Iranis kept in touch with SKF during their immigration process. Ms. Irani made several trips to California during which she visited SAFARI KID learning centers in Northern California, scouted locations for establishing a SAFARI KID learning center in San

- 3 -

1  Diego, California, asked SKF representatives to visit particular locations in San Diego, California
2  that could be leased for use as a SAFARI KID learning center and to speak with the landlords of
3  the same, and attended part of the SAFARI KID franchisee training program conducted by SKF
4  in the Northern District of California.

5      18. In reliance on the Iranis' representations that they were getting ready to open a
6  SAFARI KID learning center pursuant to all terms of the SAFARI KID franchise system, SKF
7  provided the Iranis with the standard SAFARI KID system training it provides to all SAFARI
8  KID franchisees consisting of, among other things: (a) ten days of training covering all aspects of
9  how to operate the business; and (b) substantial proprietary operational information of Plaintiffs.
10 In addition, SKF provided the Iranis with a complete copy of its Operations Manuals containing
11 detailed information about how to run a SAFARI KID learning center, including without
12 limitation classroom curricula, methods of teaching, methods of promoting the learning center
13 and increasing enrollment, and other internal techniques and know-how for increasing and
14 retaining child enrollments, all of which Plaintiffs maintain within their SAFARI KID system as
15 highly confidential and proprietary information and which Plaintiffs do not disclose outside of
16 their SAFARI KID system.

17     19. SKF also: (a) provided the Iranis with additional training at other times, including
18 without limitation permitting the Iranis to attend a 2014 open house event at which the Iranis had
19 access to teacher information; (b) gave teacher training to Ms. Irani in January 2015; and (c)
20 permitted Ms. Irani to record SKI owner and co-founder Shahdokth Mudakavi teaching on
21 several occasions.

22     20. In or about April 2014, the Iranis identified a location for their SAFARI KID
23 learning center in San Diego, California. They provided notice to SKF along with a request for
24 approval of said location, consistent with the requirements of the SKF franchise agreement. SKF
25 reviewed the location and approved it, and in or about June 2014, the Iranis executed a lease for
26 that location.

27     21. SKF provided substantial support to the Iranis during their lease review process,
28 build out of the leased site, and planning for the grand opening of their SAFARI KID location. In

advance of the opening of the Iranis' SAFARI KID location, SKF: (a) identified the Iranis' SAFARI KID location on the webpage of SKF's website wherein SKF identifies all authorized Safari Kid locations; and (b) provided the Iranis with support and advice regarding their opening.

22. Although SKF asked the Iranis to sign the SKF franchise agreement, which required payment to SKF of $50,000 (the "**Initial Fee**"), the Iranis delayed repeatedly until they finally agreed to meet with SKF to sign the SKF franchise agreement in January 2015. At that meeting, the Iranis said they would sign the contract but could not afford to pay the Initial Fee. They had already begun construction of their SAFARI KID learning center and said they could not afford to pay for both the construction and the Initial Fee at the same time. They asked SKF for more time to pay the Initial Fee, and, in reliance on the Iranis' representations, SKF agreed to give them six months to do so. Despite this accommodation, the Iranis never signed the SKF franchise agreement.

23. In early 2015, the Iranis opened their learning center under the name "Safari Kid." That same month, the Iranis began advertising their "Safari Kid" learning center using the safarikidschool.com domain name, which the Iranis had registered despite their knowledge of the prohibition in the SKF franchise agreement on registering any domain name containing the SAFARI KID mark.

24. Shortly thereafter, SKF against requested that the Iranis sign the SKF franchise agreement, pay the Initial Fee to SKF, and begin paying royalties to SKF as required under the SKF franchise agreement. Once again the Iranis refused, claiming for the first time that they were not franchisees in the SAFARI KID system.

25. Plaintiffs are informed and believe, and based thereon allege, that within weeks after the Iranis opened their "Safari Kid" location, they had enrolled between fifteen and eighteen students at their learning center.

On or about September 10, 2015, following demands by SKF to the Iranis to comply with the SAFARI KID franchise requirements and the SKF franchise agreement, the Iranis changed the name of their learning center to "Dot to Dot" and stopped using the safarikidschool.com domain name. As of the date of this Complaint: (a) third party advertising, including without limitation on

the yelp.com and yellowpages.com websites, still refers to the Iranis' business as "Safari Kid"; (b) the Iranis continue to own the safarikidschool.com domain name; and (c) the Iranis remain in possession of proprietary, confidential, and trade secret materials owned by Plaintiffs and relating to the operation of a SAFARI KID learning center.

26. The Iranis have failed and refused to report the revenues of their business to SKF and, to date, have not paid any monies to SKF. The Iranis continue to own and operate their learning center offering daycare, preschool, and after school programs from the same premises that initially operated as a SAFARI KID learning center. Plaintiffs are informed and believe, and based thereon allege, that the Iranis continue to provide services to many of the same enrolled children and families who initially enrolled with the Iranis' business when it was operated as a SAFARI KID facility in connection with the SAFARI KID mark.

## FIRST CLAIM FOR RELIEF

### Trademark Infringement Under The Lanham Act, 35 U.S.C. §1125(a)

### (By Plaintiffs Against All Defendants)

27. Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 26 above as though fully set forth below.

28. The SAFARI KID mark is a valid, protectable mark owned by Plaintiffs, and the primary significance of which is that it known by the consuming public as a source indicator for Plaintiffs' products and services.

29. Defendants' unauthorized use of the SAFARI KID mark in connection with a preschool and daycare center is confusingly similar to the use of Plaintiffs' SAFARI KID mark for identical purposes. The use by Plaintiffs and their authorized franchisees, on the one hand, and by Defendants, on the other hand, of the SAFARI KID mark is aimed at the same class of consumer, namely, parents and guardians of young children.

30. Defendants' unauthorized use of the SAFARI KID mark is likely to cause confusion, to cause mistake, or to deceive consumers into falsely believing that Defendants' business is related to Plaintiffs' business, and/or that Defendants' business is in some way sponsored by or connected or affiliated with Plaintiffs or the services of Plaintiffs' franchise

1  system within the meaning of 15 U.S.C. § 1125.

2      31.    Plaintiffs are informed and believe, and based thereon allege, that Defendants knew, or should have known, of Plaintiffs' rights to the SAFARI KID mark, and that Defendants' unauthorized adoption and continued use of Plaintiffs' SAFARI KID mark was knowing, willful, deliberate, and done with the intention of trading upon the goodwill built up by Plaintiffs and their SAFARI KID franchise system. Defendants' actions and omissions make this an exceptional case within the meaning of 15 U.S.C. § 1117.

    32.    Defendants' unauthorized use of the SAFARI KID mark has caused, and unless restrained and enjoined by this Court will continue to cause, substantial, immediate, and irreparable injury to Plaintiffs' business, reputation, and goodwill for which Plaintiffs are without an adequate remedy at law. Plaintiffs are therefore entitled to injunctive relief as against Defendants in connection with said unauthorized use.

    33.    As a direct and proximate result of Defendants' unauthorized adoption and continued use of Plaintiffs' SAFARI KID mark, Plaintiffs have suffered and are continuing to suffer injury, loss, and damages in an amount to be proven at trial. Based on such conduct, Plaintiffs are entitled to injunctive relief, monetary damages, and other remedies provided by Sections 1116, 1117, and 1118 of the Lanham Act, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

WHEREFORE, Plaintiffs seek relief against Defendants as set forth below.

## SECOND CLAIM FOR RELIEF

**False Designation of Origin Under The Lanham Act, 15 U.S.C. § 1125(a)**

**(By Plaintiffs Against All Defendants)**

    34.    Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 26 above as though fully set forth below.

    35.    Defendants' unauthorized use of the SAFARI KID mark constitutes false designation of origin, false or misleading description, and/or false or misleading representation.

    36.    Defendants' unauthorized use of the SAFARI KID mark so resembles Plaintiffs' identical SAFARI KID mark used in connection with the same or related services as to be likely

to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to origin, sponsorship, or approval of Defendants' services and other commercial activity within the meaning of 15 U.S.C. § 1125(a).

37. Such false designation, description, and/or representation by Defendants constitutes unfair competition and is an infringement of Plaintiffs' rights in their SAFARI KID mark in violation of the Lanham Act, 15 U.S.C. § 1125(a).

38. Plaintiffs are informed and believe, and based thereon allege, that at all relevant times Defendants knew, or should have known, of Plaintiffs' rights in and to the SAFARI KID mark and that said trademark is a source indicator of Plaintiffs' products and services, and Defendants' false description, false representation, and false designation of origin were knowing, willful, and deliberate, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

39. By the direct diversion of customers, and the lessening of goodwill associated with Plaintiffs' franchise system conducted in connection with the SAFARI KID mark, Plaintiffs have been injured as a result of Defendants' false and misleading advertisement, promotion, and use of the SAFARI KID mark.

40. Defendants' unauthorized use of the SAFARI KID mark has caused, and unless restrained and enjoined by this Court will continue to cause, substantial, immediate, and irreparable injury to Plaintiffs' business, reputation, and goodwill for which Plaintiffs are without an adequate remedy at law.

41. As a direct and proximate result of Defendants' unauthorized adoption and continued use of Plaintiffs' SAFARI KID mark, Plaintiffs have suffered, and are continuing to suffer, injury, loss, and damages in an amount to be proven at trial. Based on the actions and omissions of Defendants, Plaintiffs are entitled to injunctive relief, monetary damages, and other remedies provided by Sections 1116, 1117, and 1118 of the Lanham Act, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

WHEREFORE, Plaintiffs seek relief against Defendants as set forth below.

///

///

### THIRD CLAIM FOR RELIEF

### Cyberpiracy Under The Anticybersquatting Consumer Protection Act (ACPA),

### Lanham Act 15 U.S.C. § 1125(d)

### (By Plaintiffs Against All Defendants)

42. Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 26 above as though fully set forth below.

43. The safarikidschool.com domain name, which wholly contains and incorporates Plaintiffs' SAFARI KID mark, is confusingly similar to the SAFARI KID mark and to the safarikidusa.com domain name owned and used by Plaintiffs.

44. Defendants registered and used, without Plaintiffs' authorization, the infringing safarikidschool.com domain name despite the provisions in the SKF franchise agreement prohibiting Defendants from registering any domain name containing the SAFARI KID mark.

45. Plaintiffs are informed and believe, and based thereon allege, that Defendants registered and used the infringing safarikidschool.com domain name with the bad faith intent of causing harm to Plaintiffs and their SAFARI KID brand and of profiting unlawfully from Plaintiffs' SAFARI KID mark by using the same to call attention to and promote Defendants' goods and services.

46. Plaintiffs are informed and believe, and based thereon allege, that Defendants registered and used the infringing safarikidschool.com domain name with the intent to divert customers from Plaintiffs' business to Defendants' business and with the bad faith intent to harm Plaintiffs' goodwill and to profit from Plaintiffs' SAFARI KID mark by creating a likelihood of confusion within the meaning of 15 U.S.C. § 1125(d) as to source, sponsorship, affiliation, or endorsement of Defendants' website to which the infringing safarikidschool.com domain name has resolved.

47. Plaintiffs are informed and believe, and based thereon allege, that Defendants knew, or should have known, of Plaintiffs' rights in the SAFARI KID mark and Plaintiffs' ownership and use of the very similar safarikidusa.com domain name, and Defendants' violation of Plaintiffs' rights was knowing, willful, and deliberate, making this an exceptional case within

- 9 -

the meaning of 15 U.S.C. § 1117.

48. Defendants' actions and omissions constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

49. Defendants' unauthorized registration and use of the infringing safarikidschool.com domain name has injured, and unless immediately restrained will continue to injure, Plaintiffs and the goodwill associated with Plaintiffs' SAFARI KID mark and Plaintiffs' safarikidusa.com domain name.

50. As a direct and proximate result of Defendants' unauthorized adoption and continued use of Plaintiffs' SAFARI KID mark, Plaintiffs have suffered and are continuing to suffer injury, loss, and damages in an amount according to proof. Because of Defendants' actions and omissions, Plaintiffs are entitled to injunctive relief as well as either statutory damages under 15 U.S.C. § 1117(d) or Defendants' profits and treble damages pursuant to 15 U.S.C. § 1117(a), reasonable attorneys' fees, costs, and prejudgment interest.

WHEREFORE, Plaintiffs seek relief against Defendants as set forth below.

## FOURTH CLAIM FOR RELIEF

### Unfair Competition Under California Common Law and California Business & Professions Code § 17200, *et seq.*

### (By Plaintiffs Against All Defendants)

51. Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 26 above as though fully set forth below.

52. Defendants' unauthorized and continued use of the SAFARI KID mark as Defendants' alleged service mark in connection with preschool and daycare services constitutes unlawful, unfair, and/or fraudulent business acts or practices in violation of California common law and California Business and Professions Code § 17200, *et seq.*

53. By virtue of the wrongful actions and omissions alleged herein, Defendants engaged in, and continue to engage in, unlawful, unfair, and/or fraudulent business practices against Plaintiffs in violation of California Business and Professions Code § 17200, *et seq.*

54. Defendants' unauthorized adoption and use of the SAFARI KID mark has caused,

and unless restrained and enjoined by this Court will continue to cause, substantial, immediate, and irreparable injury to Plaintiffs' business, reputation, and goodwill.

55.  As a direct and proximate result of Defendants' unauthorized adoption and continued use of Plaintiffs' SAFARI KID mark, Defendants have unfairly benefitted from their wrongful actions and omissions and Plaintiffs have suffered, and are continuing to suffer, injury, loss, and damages in an amount according to proof. Because of Defendants' actions and omissions, Plaintiffs are entitled to remedies available under California Business and Professions Code § 17200, including without limitation injunctive relief and restoration of money acquired by Defendants' wrongful conduct.

WHEREFORE, Plaintiffs seek relief against Defendants as set forth below.

## FIFTH CLAIM FOR RELIEF

**Misappropriation of Trade Secrets Under the California Uniform Trade Secrets Act**

**(By Plaintiffs Against All Defendants)**

56.  Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 26 above as though fully set forth below.

57.  At all relevant times Plaintiffs have owned and been in possession of trade secrets (together, the **"Trade Secrets"**), including without limitation: (a) the standard SAFARI KID system training provided to all SAFARI KID franchisees and consisting of ten days of training on all aspects of how to operate the business; (b) the SAFARI KID Operations Manuals containing information about how to run a SAFARI KID learning center, including without limitation classroom curricula, methods of teaching, methods of promoting the learning center and increasing enrollment, and other internal techniques and know-how for increasing and retaining child enrollments; and (c) teaching information and training provided to SAFARI KID franchisees.

58.  At all relevant times Plaintiffs' Trade Secrets had and still have economic value in that the use of the same creates the conditions for the successful acquisition and retention of students at SAFARI KID franchises. Plaintiffs have taken and continue to take reasonable efforts to insure that their Trade Secrets remain secret by maintaining the information within the

1  SAFARI KID system as highly confidential and proprietary information and by not disclosing the
2  information outside of the SAFARI KID system.

3  59. Defendants knew or had reason to know that: (a) the Trade Secrets were and are
4  provided by Plaintiffs only to SAFARI KID franchisees; and (b) only SAFARI KID franchisees
5  were and are allowed to access and use this information.

6  60. As a proximate result of Defendants' unauthorized use, possession, and
7  misappropriation of Plaintiffs' Trade Secrets: (a) Plaintiffs have suffered actual damages; and (b)
8  Defendants have been unjustly enriched through their enrollment and retention of students using
9  Plaintiffs' Trade Secrets.

10  61. Defendants' unauthorized use of Plaintiffs' Trade Secrets has caused, and unless
11  restrained and enjoined by this Court will continue to cause, substantial, immediate, and
12  irreparable injury to Plaintiffs' business, reputation, and goodwill for which Plaintiffs have no
13  adequate remedy at law.

14  62. Plaintiffs are informed and believe, and based thereon allege, that Defendants'
15  actions and omissions were knowing, willful, and malicious in that Defendants misappropriated
16  Plaintiffs' Trade Secrets with the deliberate intent to injure Plaintiffs' business and improve
17  Defendants' business. Defendants' actions and omissions make this an exceptional case within the
18  meaning of 15 U.S.C. § 1117. Plaintiffs are therefore entitled to punitive damages in an amount to
19  be proven at trial. Plaintiffs are also entitled to reasonable attorney's fees.

20  WHEREFORE, Plaintiffs seek relief against Defendants as set forth below.

## SIXTH CLAIM FOR RELIEF

### Breach of Contract

### (By SKF Against All Defendants)

24  63. Plaintiffs reallege and incorporate herein by this reference the allegations of
25  paragraphs 1 through 26 above as though fully set forth below.

26  64. In April 2013, SKF and Defendants entered into an oral agreement (the "**Oral
27  Contract**") whereby SKF agreed to allow Defendants to open a SAFARI KID franchise and to
28  provide Defendants with training and materials to open a SAFARI KID franchise, and in

- 12 -

exchange Defendants agreed to operate a SAFARI KID franchise, to sign the SKF franchise agreement within six months, to pay the Initial Fee to SKF after signing the agreement, and to begin paying royalties to SKF as required under the SKF franchise agreement.

65. SKF has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Oral Contract.

66. On or about July 15, 2015, Defendants breached the Oral Contract by refusing to sign the SKF franchise agreement after starting the franchise business, pay the Initial Fee required to open and operate a SAFARI KID franchise, and pay royalties to SKF.

67. As a result of Defendants' breach of the Oral Contract, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs seek relief against Defendants as set forth below.

## SEVENTH CLAIM FOR RELIEF

### Fraud Under California Civil Code § 1572

### (By SKF Against All Defendants)

68. Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 26 above as though fully set forth below.

69. In or about April 2013, Defendants represented to SKF that Defendants had agreed to the terms of the SKF franchise agreement and agreed to open a SAFARI KID learning center in San Diego, California under those terms.

70. On or about July 15, 2015, Defendants represented to SKF that Defendants were a SAFARI KID franchisee, that Defendants would sign the SKF franchise agreement, that Defendants would pay SKF the Initial Fee after signing the SKF franchise agreement, and that Defendants would pay royalties to SKF as required by the SKF franchise agreement (together, the "Misrepresentations").

71. The Misrepresentations were false when they were made by Defendants. The true facts were that: (a) Defendants never intended to pay any monies to SKF; (b) Defendants intended instead to obtain from Plaintiffs as much training, curricula, and information as possible regarding how to operate a successful, competitive, learning center in California without compensating

- 13 -

SKF; and (c) Defendants planned to utilize the goodwill in the SAFARI KID brand and knowhow to launch a daycare and preschool learning center business without signing the SKF franchise agreement and without paying the Initial Fee or royalties to SKF.

72. When Defendants made their Misrepresentations to SKF, Defendants knew their Misrepresentations were false, and Defendants made their Misrepresentations with the intention to deceive and defraud SKF and to induce SKF to act in reliance on the Misrepresentations in the manner hereafter alleged or with the expectation that SKF would so act.

73. At the time Defendants communicated the Misrepresentations to SKF, and at the time SKF took the actions herein alleged, SKF was ignorant of the falsity of Defendants' Misrepresentations and reasonably believed them to be true. In reliance on Defendants' Misrepresentations, SKF was induced to and allowed Defendants to open a SAFARI KID franchise and provide Defendants with training and materials to open a successful SAFARI KID franchise. Had SKF known the true facts, SKF would not have taken such actions. The reliance by SKF on Defendants' Misrepresentations was justified because the true facts were only known by Defendants.

74. As a proximate result of the fraudulent actions and omissions of Defendants as herein alleged, SKF was induced to expend inordinate time and energy helping Defendants acquire property to conduct their SAFARI KID franchise and provide to Defendants the highly confidential and proprietary Trade Secrets intended to be available only to franchisees within Plaintiffs' SAFARI KID system in order to advise and train Defendants as to how to acquire and retain students and operate a successful SAFARI KID franchise. Nonetheless, SKF has not received any profit or other compensation from Defendants. SKF has been damaged by its justifiable reliance on Defendants' Misrepresentations, actions, and omissions in an amount to be proven at trial.

75. Defendants' actions and omissions: (a) constituted an intentional course of misrepresentation, deceit, and/or concealment of material facts know to Defendants with the intention on the part of Defendants to cause injury to the business, reputation, and goodwill of SKF; and (b) was despicable conduct subjecting SKF to a cruel and unjust hardship in conscious

- 14 -

disregard of SKF's rights, so as to justify an award of exemplary and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For a permanent injunction restraining Defendants, their officers, agents, servants, employees, representatives, attorneys, assigns and all other persons in active concert or participation with them from:

    (a) Using the SAFARI KID mark, or any trademark or service mark that is confusingly similar to the SAFARI KID mark, as the whole or any part of a business name in connection with preschool and daycare services;

    (b) Using the SAFARI KID mark, or any trademark or service mark that is confusingly similar to the SAFARI KID mark, in connection with the advertising, sale, or promotion of preschool and daycare services or any services related thereto;

    (c) Holding out in any manner whatsoever that Defendants or Defendants' goods and/or services are in any way sponsored by, associated with, connected to, or affiliated with Plaintiffs or Plaintiffs' SAFARI KID franchise system; and

    (d) Using any proprietary, confidential, and trade secret information provided by or related to Plaintiffs' SAFARI KID franchise system;

2. That Defendants be directed to deliver to Plaintiffs during the pendency of this action, and for subsequent destruction at the conclusion of this action, all materials of any nature whatsoever bearing the SAFARI KID mark, or any trademark or service mark that is confusingly similar to the SAFARI KID mark, or any reproductions or imitation of the SAFARI KID mark, pursuant to 15 U.S.C. § 1118;

3. That Defendants be required to make an accounting to Plaintiffs and be directed to pay over to Plaintiffs all gains, profits, and advantages realized by Defendants from the advertisement and/or sale of goods and/or services bearing the infringing designation, pursuant to 15 U.S.C. § 1117 and California Business & Professions Code § 17200 et seq.;

4. That Defendants be directed to pay to Plaintiffs all damages suffered by Plaintiffs,

pursuant to 15 U.S.C. § 1117;

5. That Defendants be directed to pay Plaintiffs' reasonable attorney's fees and all costs connected with this action, pursuant to 15 U.S.C. § 1117;

6. That Defendants be directed to pay to Plaintiffs prejudgment interest at the maximum rate permitted by law;

7. That Defendants be directed to transfer ownership and control of the safarikidschool.com domain name to Plaintiffs;

8. That Defendants be directed to pay to SKF compensatory damages according to proof;

9. That Defendants be directed to pay to Plaintiffs punitive damages in an amount to be determined at trial; and

10. For such other and further relief as the Court may deem just and proper.


Dated: December 14, 2015        DONAHUE FITZGERALD LLP

                                By: _____
                                Eric A. Handler
                                Attorneys for Plaintiffs
                                SAFARI KID INC. and SAFARI KID
                                FRANCHISING LLC


## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. Pro. 38(b) and Federal CRC 3-6, Plaintiff demands a jury trial.

Dated: December 14, 2015        DONAHUE FITZGERALD LLP

                                By: _____
                                Eric A. Handler
                                Attorneys for Plaintiffs
                                SAFARI KID INC. and SAFARI KID
                                FRANCHISING LLC